Good afternoon, Your Honors, and may it please the Court. Local governments may restrict property uses, but the Constitution forbids them from enforcing these restrictions for arbitrary reasons or in an unequal manner. On summary judgment, the question for this Court is whether, when viewing the facts in the light most favorable to Brookwood, reasonable jurors could say, judging the historical record and the evidence in the record, that the City acted in an irrational or arbitrary manner when denying Brookwood's permit application, or that the City treated Brookwood dissimilarly from a similarly situated climate-controlled storage facility that was approved by the Turning first to Brookwood's substantive due process analysis, the District Court aired in two ways that, once corrected, lead straight away to reversal. The first is the District Court refused to recognize that Brookwood had a protected property interest in obtaining a permit. Well, wasn't it pretty different from the Storage Max property interest? No, Your Honor, it was not different in terms of the ordinance that applied both properties, both the Storage Max facility and Brookwood, had to apply for a conditional use permit using the same process, meeting the same fifteen general standards, and getting the same approvals from the Zoning Board and the Architectural Review Board. Now, they were in different zones, and that's what the District Court focused on. Storage Max was in a technical industrial zone, and our client, Brookwood, was in a highway commercial zone. But in both zones, and this is an important point, in both zones, the zoning ordinance provided for storage facilities as a conditional use, meaning it was a pre-approved use. The legislative act of approving the use had already occurred for both zones. The question was whether a specific site or a specific property could meet the standards. But, I mean, we're well aware that cities can think, oh, this is nice, this is nice, and then, ah, there's too much of this, oh, we need to pull back, and this goes on and on and on for years. Why isn't that what sort of happened here, and why can't that be what happened here, that we don't have to have, you know, a million restaurants in New Orleans, maybe just 999,000? Well, they can do that, Your Honor, and they do it through rezoning, through legislating. So, what they can't do is what the City of Richland did here, is say, as a matter of legislative policy, we will permit these uses, and then get to the adjudicative process, where they're implementing the legislative policy and say, well, even though you've met all 15 of our standards, as a policy matter, we just don't want these uses anymore. What the city has to do in that instance is go through a rezoning process, and that would be a legislative process. So, turning back to the property interest at issue here, Brookwood's property interest is twofold. First, Brookwood had a contract to purchase property owned by Drury Hotels, the adjacent property owner. And that property— It could pull back at any time, right? It could, Your Honor, under the option—well, Brookwood had the option not to go through with the purchase, if it did not get the permits that it was seeking. But the purchase contract, under Mississippi law, gave Brookwood equitable ownership in the property. And that is property—that is an ownership interest recognized by Mississippi common law for many years. We've cited cases going back to 1953, from the Mississippi Supreme Court, saying that a purchaser under a contract has an equitable ownership interest. There are cases from the Mississippi Supreme Court, Ball v. City of Natchez, Bryan v. City of Madison, saying that includes, at the very least, the right to seek zoning changes related to the property and the right to challenge zoning changes related to the property. So, this common law right that Brookwood held is protected by due process without regard to any government benefit analysis. So, when the district court looked to the zoning ordinance to try to determine if a property right existed, that was a mistake. What the district court should have done, and I think the River Park v. City of Highland decision from the Seventh Circuit is the case that I've found that lays this out most clearly in the permitting context, is say there are certain property rights, such as the right to build on one's land, that exist and are protected by the due process clause without regard to whether the government passes ordinances or statutes granting or denying that right. Those ordinances are restrictions on the property right, but they don't create the property right. So, we don't think this court even needs to get to the government benefit analysis that is done when you're discerning whether, for example, in Ridgely v. FEMA, beneficiaries were entitled to certain rent supplements after a hurricane. That's a different type of property right. Well, go deeper into your substantive due process argument. It sort of bleeds over into sort of the ordinary municipal processes, shall I say, and decisions that are made in that crucible. At the heart of what you started is to say that the district court erred in understanding, appreciating, analyzing the substantive due process piece. So, go a little bit deeper as to what the judge missed there and more to the point. How that eclipses, otherwise, these discretionary choices that municipalities make all the time. Yes, Your Honor. So, what the district judge did when it got to the analysis of whether Brookwood had been deprived of a property interest by the denial of the permit, the district court looked at the permitting process as a legislative process. That, as she described it, involved open-ended discretion with the zoning board or the board of alder. In fact, the permitting process . . . Well, as I see it, I know I'm interrupting. What's the fountainhead? What's the fulcrum? What's the core piece of the substantive due process piece? I know you're saying she's confusing it. Maybe that's why she . . . But, I mean, just drill down, not gossipy, but the constitutional piece of it. So, in our view, the core piece is, one, there's a protective property interest. That goes all the way back to Blackstone. Two, when you're looking at permitting questions, you have to judge the city's actions under the due process analysis based on historic facts, not hypothetical reasons that you might give them credit for in a legislative analysis. So, to take this particular case, reasonable jurors looking at the historic facts and the record evidence in this case would see a number of things that would permit them to find in Brookwood's favor. First is, the city's professional planning staff worked with Brookwood to get the application in shape to be presented to the zoning board. The zoning board, after a couple of public hearings, one at which a zoning board member testified involved a textbook presentation showing why all of the city's criteria were satisfied, the zoning board approved the application. The architectural review board, whose job it is to look at site plans and make decisions about whether a use should be permitted, approved the application. Then, you get to the board, and the zoning board, architectural review board, city planning staff, having followed their usual procedures, have approved this permit application. The board engages in what we've shown are irregular and secretive procedures that are out of context with the usual process. So, the first thing the board does when Brookwood's application is up is put in place, instead of taking up the application at the meeting where it's scheduled, they impose a moratorium on all climate-controlled storage facilities. And this wasn't your ordinary moratorium, which typically originates from aldermen. The testimony of all the aldermen was that they were shocked to find out there would be a moratorium that day. None of them knew it. How did the moratorium come about? Well, there was no public discussion of it. Only through discovery did we learn that the moratorium was conceived of by the mayor and the city attorney. Now, the mayor said alderman Smith suggested the moratorium. Alderman Smith said he was shocked to find out it was on the agenda. So, irregular procedures. Instead of discussing Brookwood's application in a public session, they go into executive session. The alderman testified, yeah, we talked about the application in the executive session. No public comment at all about the application. And then when the board finally denies the permit application, they offer reasons that were never given by any of the city planning staff, by the zoning board, or the architectural review board. And then when you drill down on those reasons, Your Honor, there's three reasons that they gave that we've shown, at least at the summary judgment stage, when the facts are considered in the light most favorable to Brookwood, reasonable jurors could reject them. The first is over-concentration. The board said, well, you met the 15 standards, but we're concerned about over-concentration. Well, that's a policy consideration. So that, at the outset, is, we think, irrational decision-making. Because if you don't want more of these facilities, as Judge Haynes and I were just discussing, you rezone. You don't say, well, we've pre-approved them, but now when we have a specific application, we've decided as a general policy we don't want them anymore. That is classic, irrational, arbitrary decision-making. If you look at the facts, there was an expert city planner who testified that these facilities are not over-concentrated in Ridgeland. And our client representative testified that when they went through the process and identified this site, they determined that there was a need for the facilities. Demand was high and supply was low. All the evidence points against over-concentration. The other reason they gave was concerns about devaluing neighboring properties, the two hotels that are adjacent to this vacant lot. Well, the seller of the vacant lot is the operator of an adjacent hotel. The very seller is not concerned. And that seller that's undisputed in the record, Robbie Piper, our representative, testified in the record at 2179 that the hotel owner knew exactly what they were going to construct on that site. The hotel owners were not concerned about property devaluation. And the city's planning director admitted that they did not talk to the hotel owners. They did not conduct any appraisals to determine if that rationale was in fact supported by evidence. And the last thing they said was, well, the owner's authority that you've shown in your application is not sufficient. So, Brookwood provided a purchase contract showing that it was purchasing the property, and within that contract there was a provision that said the purchase was subject to it getting proper city approvals. So, it's undisputed that the owners actually knew what Brookwood was going to do. The purchase contract gave them the authority to do it. And the city has never explained why in the case of StorageMax it was willing to accept a letter from StorageMax referencing that it had a purchase contract. But when you get to Brookwood, it's unwilling to accept the underlying document, the purchase contract itself. Again, evidence that, not saying we went on it, but reasonable jurors could look at all of this evidence and say, yeah, we don't believe these reasons given by the city. As for the equal protection claim, the district court, again, the bases offered by the city are the same three that I just walked through. The district court's analysis focused on StorageMax not being similarly situated to Brookwood, our property. There's a couple of problems with that. First, the district court focused on the different zones as we talked about technical industrial park versus highway commercial. These sites are about a mile from each other. They both have interstate frontage on the west side of Interstate 55, which is a north-south thoroughfare through Mississippi up to Memphis. And, again, there's expert testimony in the record, Donovan Scruggs, who looked at both of these sites and projects and said you couldn't find a better comparator. But you don't have to take the expert's words for it because the city's own planning department, when Brookwood first approached the city about siting this project there, said, you know what you should do? You should look at StorageMax because that is the standard by which the city is comparing new climate-controlled storage facilities. So you have the city itself directing Brookwood to mimic its property after the StorageMax property, which Brookwood did after going through revisions, working with the planning staff, working with the zoning board to get the plan as similar to StorageMax as possible so that it would be approved. So if this comparator doesn't satisfy the class of one requirement for similarly situated properties, I don't know what would. Again, expert testimony confirms that the city itself directed Brookwood to mimic StorageMax. So we think when the test is properly applied, as this court has instructed in Lindquist v. City of Pasadena, it's not a rigid mechanical test. It's a flexible, reasonable observer test. Do these facilities look like they're pretty similar and did the city treat them differently? That's clearly satisfied here. Could a city go forward with its zoning rules and so forth in a procedure and then realize that there were reasons that transcend that are larger than the particular applicant and then go back and effectively legislate? The problem would be then, my suggestion would be, is that what happened here or not? They were going through the process, et cetera, et cetera, and then the mayor says to the lawyer, whatever had happened, that we've got a problem here. Then they go back. To get into legislation, of course, as you acknowledge very ably, the different ballgame, of course. That's kind of two categories of regulatory procedures and processes here. In essence, that's going down one, can they not change their mind, say, wait a minute, we've got to get hold of this problem. And then create a legislative process on it. Yes, Judge Fickenbotham, they certainly can, and this case is a good example of that. What the city ultimately did after the moratorium ended was they rezoned to prohibit storage facilities in certain areas. But again, what they can't do, and that would be a legislative process subject to rational basis review, hypothetical reasons, and we did not challenge that zoning change here for that very reason. But what they cannot do is say we have pre-approved these uses, you've met all the standards, but as a policy reason, we're not going to let you have your specific project in this zone. That is what substantive due process prohibits. Again, at the summary judgment stage on these facts. Thank you, Your Honor. You would say there are no facts in dispute. From your standpoint, it's a matter of law, right? Well, there are facts in dispute. I think the city would say they have reasons that . . . Well, I guess I'd say it this way. It was at the summary judgment stage. This one is teed up a little different than a lot of the ones we get, where there's a whole lot of that transpired depositions, back and forth, et cetera, et cetera, in the development of it all. Your seventy-nine page application, et cetera, the district court had all that, and the various positions about bias, et cetera. Unless you argue that you can shoot them against you, it just doesn't seem like this is turning on a genuinely disputed issue that the jury ought to decide versus your laser focus here is that there's a constitutional violation, that there's a legal issue. In other words, they weren't entitled to summary judgment as a matter of law, and the error is that law. I'm just trying to hone in because we've got a whole lot of facts talked about here and all that, but I don't really hear that this case is turning on whether the facts came out right versus you're saying there's a substantive due process issue here. That's why I was trying to get you to hone in on it. The district court went through all of it, eschewed that you even had all these rights, but said at the end of the day, you had all the process you were entitled to. That's what she says in a 30-page memorandum. I'm just trying to circle my way back to whether your principal aim here is that there's a constitutional impediment. That's where you're trying to drive home. I can best understand. We can adapt what they're going to get back up to say, and of course, you'll have time on rebuttal. Going over all that you said and looking here at all these facts and who was deposed and so forth, I'm like, wait a minute. We're really saying that there's facts here that the judge didn't let you get in, et cetera, or is it really narrowed in on the legal . . . you follow what I'm saying? I do, Judge Stewart. If I can have . . . Yeah, yeah. Thank you, Your Honor. I guess I have a few responses to that. The first is, this did go on summary judgment. If you read the district court's opinion, I read it at least. She credits all the city's facts and does not credit the facts that I've just walked through that are in the record that would undermine the city's bases. This court in McKeska, 2006 decision, said there's nothing special about rational basis review on summary judgment. You do the standard process. You view all the facts in the light most favorable to the non-movement. That's Brookwood. The second is, we did make a procedural due process argument, and she did say you got all the process you were due, and we are not challenging that on appeal. We are only focused on the substantive property interest protection form and the equal protection. Okay. Got you. That's helpful. Very helpful. Thank you. Thank you. All right. We'll hear from the city. Mr. Kitty. Good afternoon, your honors. May it please the court. My name is Zach Kitty. I'm here along with John Scanlon, and we represent the city of Ridgeland, the appellants, and the elected officials, the appellants in this matter, here asking this court to affirm the district court's ruling that there is no genuine issue of material fact with regard to Brookwood's claims for substantive due process and equal protection. Well, it's a whole lot here. I mean, why should we wrestle with all this stuff and send you all to a trial? Well, your honors, what's key here is that the evidence that Brookwood's relying on to counteract Ridgeland's position in denying the conditional use application was all done after the hearings before the Mayor and Board of Aldermen and the Zoning Board. The expert that Brookwood refers to wasn't hired until after this process had occurred, so the facts before the Zoning Board were simply a one-page statement that they met all these requirements of the zoning ordinance, which in turn the city found that they did not meet those requirements and therefore denied the conditional use application. So the facts that Brookwood wants to dispute were never before the Board of Aldermen. They didn't have their planning and zoning expert, and they didn't have the expert testimony of Robbie Piper to rely on before the Zoning Board. So therefore, the only facts that we have are the minutes from the Zoning Board meetings, the resolution denying the conditional use, and the zoning ordinance itself. Every other evidence that Brookwood relies on was after the fact and not before the Mayor and Board of Aldermen when they made their decision. But to properly analyze this case, it's important that we look at the umbrella of zoning and how the zoning-enabling legislation in Mississippi grants a discretionary power to the City of Ridgeland to draft its zoning ordinance and how the City of Ridgeland used that discretionary power to First, in Mississippi Code Annotated 1713, the Mississippi Legislature granted authorities and municipalities the power in its discretion to regulate the height and size of buildings, land size, the size of yards, setback requirements, for the purposes of promoting the health, safety, morals, and general welfare of the community. And we further see in Mississippi Code Annotated Section 1717 that governing authorities are allowed to divide sections of their municipality into zones, and with each zone has different regulations. So when Ridgeland drafted its ordinance, it created these zones. Brookwood proposed site was in the C4 zone. The purpose of that zone is for highly planned developments, typically required direct auto traffic, access and visibility from U.S. highways and the interstate. And one thing that Council for Brookwood has not mentioned and failed to district, which adds a heightened standard that goes on top of what's already contained in C4. It has a heightened standard that's for commercial. It's a commercial corridor of the city. And so it has to have different standards. And Storage Max, this facility, was only in TIP and was not contained inside the North Park Overlay District. So they're inherently different in that they're in different zones. The zones have different standards. And on top of that, Brookwood had heightened standards because its proposed facility was going to be located inside of the North Park Overlay District. Further. What's your best argument on the lack of an equitable title? Yes, Your Honor, thank you for that question. The sales contract that Brookwood had did not grant them an entire ownership of the property. It granted them limited rights. They did have the right to seek zoning action. However, one of the reasons that they did not have a protected property interest in their conditional use was because they failed to show that they had the owner authority. The provision of the contract that specifies that they had approval from the jury to seek a site plan never mentioned anything about a conditional use. And those are two very different things within the original zoning ordinance. Site plan is just the aesthetics of the building, how it looks, and architecture. Whereas a conditional use goes in further detail about whether there's going to be a detriment to property values, whether it's consistent with the other facilities in the area, and also the effect that it would have on the community as a whole. Which is why the district court decided in its ruling that this was a legislative act. Because the original zoning ordinance speaks to the jurisdiction as a  whole. It doesn't just speak to it. It has to look at this particular piece of property and decide whether or not this particular property fits in this area. It looks at the effect that it would have on the city as a whole. Therefore, the equitable property argument that they have is just that they did have a right to challenge the zoning action, but it did not give them the rights to build anything on the land. It didn't give them the right to exclude anybody from the land. They just simply had the ability to contest a zoning decision. They didn't have . . . the equitable ownership didn't give them the full rights because the contract was never fully executed. In fact, in one of their interrogatory responses . . . I thought y'all . . . well, I'll ask your colleague. Your Honor, this appears I'm out of time, but just to briefly wrap up, we ask this court to confirm the district court's ruling. All right. Thank you, sir. All right. Mr. Scanlon. I thought y'all said that Brookwood did not have proper title. Your colleague makes it sound like they did. Brookwood had attached to its petition for a conditional use an option contract to purchase the real estate. Right. But y'all said that wasn't enough. Yes, ma'am. Actually, the proprietor of Brookwood, Mr. Robbie Piper, in his deposition, was pointing to section five of the contract to rely on that to be the owner authority as well as the interest in the land. When he was asked under oath, and this was noted on page 2777 by the district court in the record on appeal, and I quote, blah, blah, blah. When we were asking him, we asked him what the authority was. He says, he cites a termination clause. If purchases aren't able to obtain approval of the site plan and subdivision plot from the applicable governing authorities, purchasers shall have the right to terminate, blah, blah, blah. So does it say exactly conditional use? No. I don't think it says that anywhere in the contract. That's a direct quote under oath by Mr. Piper, the owner of Brookwood Development. He is conceding an unsworn testimony that they really didn't have anything. When we asked them in their interrogatories, what is your property interest? The sworn response was, well, we're still in touch with the real estate agent, and depending on how this case works out, we may call the real estate agent later and perhaps we can talk to him and buy the property then. They didn't have the right to exclude anyone. They had an option to purchase the land. The district court was correct in noting that the relevant interest is a property interest where you've got the right to build, to seek conditional use permits, to exclude people from the property. The interest that Brookwood arguably had in an option contract is not the relevant interest that gives rise to constitutional claims, which is one of the reasons why its substantive due process claim fails, but of course . . . Counsel, I thought that Mr. Hart looked into this and came back and said, we've got a problem that they have now seen, and they backed it. They declared a moratorium and then they enacted a new ordinance. Is that what happened? Yes, Your Honor. There was concern from the city to examine overconcentration, for example, Mr. Bentley mentioned, and other effects of this type of use when there is an overcrowding of them within a city. Mr. Hart, the community development director at the time, now public works director, did do some research that he later presented to the Board of Aldermen and ultimately made a presentation of his recommendation as to how they should amend the zoning ordinance and make those changes. That amendment of the zoning ordinance contained things such as certain buffer zones and reuse requirements that were not relative to the denial. . . . . . . . . . .      And your amendment was?  Stated? Amended ordinance? Did you enact an ordinance? If I understand the Court's question correctly, the city did enact an amendment to its ordinance. It amended its ordinance via ordinance. That's the way that is happens. Clearly a legislative act as well. But the amendment that was made on May 4th, 2021 was not the basis for the denial of the conditional use. Its axiomatic that a Board speaks only to its minutes and the reasons it contained in its adopted ordinances and orders matters of policy. So... It's an adopted ordinance, which would be protective of you, but you're walking away from that? Well, no, Your Honor. We're not walking away from the adoption of the ordinance. At one point in time... It's one thing for a city to enact ordinances, and they have a wide latitude to do that. And they're quite different standards. It's not a procedural due process, et cetera. But when you create a particular process, go through, and then you have to... I don't know if this denial is a product of the new ordinance? You say no? That's... You declared a moratorium, and then you passed an ordinance. That's true, Your Honor. The timing... Okay. Well, why was this denial made? So there were a number of reasons. Most notably, there were two primary reasons. First, there was no written authority to act on behalf of the landowner, which I discussed a moment ago about the testimony by Mr. Piper about blah, blah, blah, paragraph 5, allegedly from the option contract. It's interesting on that point, because when Brookwood makes the allegation that storage max is a similarly situated comparator, there actually is record evidence that storage max provided signed written authority by each of the owners. But going back to the denial reasons in the resolution adopted by the Board of Aldermen, there were a number of standards, conditions present which do not exist according to the resolution under section 600.09 of the zoning ordinance. Those included a lack of context-sensitive design of surrounding uses, insufficient parking in the site plan to meet the requirements. Third, it was not proven not to be detrimental to public welfare. Fourth, there's no compatibility with the intended character of the zoning district. And fifth, Brookwood did not meet its burden in showing that there would not be a depreciation in property values. And I think that this case really goes to two things, discretion of a Board of Aldermen as a zoning authority under the zoning enabling statutes that Mr. Giddey mentioned, and also insufficient proof, the lack of meeting its burden. I don't think it can be argued that Brookwood had the burden as the Board of Aldermen, not an advisory committee like the zoning board, but the Board of Aldermen, to show that it had met all of, not only the 15 requisite standards in section 60009 paragraph D, but also that the purposes of the zoning ordinance would be met. And the zoning ordinance is clear that there shall be no conditional use granted unless there is an express finding by the mayor and Board of Aldermen that it's not detrimental to the public health, safety, welfare, and general normals of the community, which is the precise language from the zoning enabling statutes Mr. Giddey mentioned in 1713. So Brookwood didn't carry its burden. And I noticed that Mr. Bentley mentioned all this evidence in the record. But the question is, what evidence did they present to the Board? We know that they hired an expert witness after the fact, after litigation had ensued. But what evidence was presented to the Board on the day that they were given the opportunity to rule on this, regardless of whether it's legislative or adjudicative? And it's essentially two things. One would be the application itself, which largely contains a lot of hydraulic and engineering information, which is a little bit more technical and site plan related. And then secondly, there was a single sheet of paper that was presented to the Board, read out loud to the zoning Board, and presented to the Board by Brookwood's former attorney, whose name is Bridgeforth Rutledge. This was section, excuse me, exhibit II in the trial court, record on seal number 2701, where he lists 15 things required under section D of the zoning ordinance. And then on the right side of the sheet of paper, it said, here's our position. But it's not proof. For example, it says depreciation of property values. I believe that's number six under section D. And Mr. Rutledge simply wrote, this should not depreciate property values. They had not employed a real estate agent. They had not introduced any appraisals. They had not employed an expert witness. They had not employed a city planner of any type. This is a common thing to do in the boardroom in front of the zoning Board and in front of the Board of Aldermen. They did all that after the fact. And that, I think, goes to the heart of what the question is here. Brookwood wants this matter to be seen through the adjudicative lens. But if it's seen through the adjudicative lens, Brookwood still has a burden to meet. Have they proven their things? Have they met their burden to show these 15 things have been met, as well as the things that are in the purposes of the ordinance? For example, section 609, the definition of a conditional use, says it's, excuse me, this is in the definition section, but it says a use that is not generally appropriate, but with certain restrictions in the judgment of the mayor of board, would protect the health, safety, welfare, and general morals of the community. This is precisely the language that Judge Johnson found at the district court level to give the discretion to the Board of Aldermen that makes this a legislative act. And Judge Higginbotham, your Honor's opinion in the Stewart v. College Station case is precisely on point here. When we view these things, your Honor said in that opinion, these things are actually quasi-judicial and quasi-legislative. And the question, the legal question, turns on one, how much discretion a board is given, if it's something that truly has no discretion, and if it's truly more of a checklist, or whether or not discretion is retained, which the Board of Aldermen has clearly retained the discretion. There's a number of areas in the district court's opinion where the court pointed out discretion of the Board of Aldermen, judgment of the Board of Aldermen. And secondly, whether or not the decision affects a single parcel or a single landowner or the community at large, which is exactly what your Honor observed in the Stewart v. College Station case about the on-street parking requirements for that particular business. It wasn't localized to that business. It affected the community as a whole. I think, I believe that same year in 1986 . . . Yes, sir. And it's interesting that you point that out, because we are talking about the lens of Mississippi zoning law and Ridgeland's particular zoning ordinance. But the analysis is the same. There are some state law cases that have said that conditional use permits are in the nature of adjudicative actions. But they do so without analysis. And then they move forward and simply treat them as adjudicative without analyzing what makes a legislative act legislative and what makes an adjudicative act adjudicative, which is what this Court, of course, is doing. If you look at the purposes contained in Section 609A, which is found on page 1690 of the record, it talks about conditional uses as unique and intensive uses that require special review. I believe it was in the rebuttal brief that Mr. Bentley, on behalf of Brookwood, said that . . . And I may not quote him correctly, but I believe he said that simply by putting a conditional use inside a And I may be misquoting him there, but the concept was it's basically granted by the fact that they even listed it as a conditional use. Once we come in and prove our 15 things, you've got to give it to us. Of course, that's really where the rub is. Have you come in and proven your 15 things under the adjudicative model, which is what Brookwood argues this Court should view it through. But they're not actually presumptively granted. Again, excuse me if I'm misquoting that. In fact, it's really more like conditional uses are sort of presumptively denied, if you will, because it says that the purposes, and this is section 609A3 contained in 1690 of the record, are to minimize potentially harmful characteristics or impact on the character of the zoning district in which they will be located. And that's another absolutely critical thing. Mr. Bentley was correct when he said that I would stand up here and tell you about the differences between TIP, as Mr. Giddey did, and C-4. Because a conditional use is not a conditional use. A conditional use is a conditional use. A conditional use is going to be dependent on what zoning classification it lands in and what's going on with the surrounding uses. Storage Max is a poor comparator for a number of reasons under the Equal Protection Analysis. Primarily because Storage Max, and this is shown in Mr. Hart's affidavit, which is in the record as well as his testimony, had to come in three different times before they were able to successfully get the development cleared through the Board of Aldermen. And the successful path was one that was allowed to reduce blight in the city of Ridgeland. Storage Max does not have direct frontage to the interstate and instead goes through a neighborhood that's near some former blighted residential areas that the city was interested in redeveloping. Whereas Brookwood was a different proposal. It was going in an area that was largely commercial, retail in character, and as Mr. Giddey pointed out, falls within the North Park Overlay District. So you've got Storage Max not in the North Park Overlay District, Brookwood in the Overlay District. Storage Max, here to reduce blight. Brookwood, there's a risk of producing blight. Storage Max, no interstate frontage. Brookwood, interstate frontage and Highway 51 frontage. Storage Max obtained parking variance. Brookwood did not obtain one. I don't believe they sought one. Storage Max is in a TIP zone, the purposes of which are appropriate to industrial uses. Whereas Brookwood is in a commercial zone where we have restaurants, hotels, nearby retail. So they're just simply not such similarly situated comparators. And the legitimate governmental interest in keeping the purposes of these zones upheld, as provided for in the Mississippi Zoning Enabling Statute, is absolutely a legitimate governmental interest, as is overconcentration. I was surprised to hear Counsel for Brookwood note that overconcentration was something they take issue with, because their expert, even though he was hired after the fact, agreed that overconcentration, which is also contained within the state statutes as a purpose to avoid for a zoning regulation, is a legitimate purpose. Mr. Hart, when he made his presentation, Judge Higginbotham, you were asking about the later Zoning Ordinance Amendment, produced a map in front of the Board of Aldermen, which I believe shows 17 different storage facilities inside the city of Ridgeland. 17. The city immediately to the north of Ridgeland has zero. So the testimony that was taken by Brookwood's counsel from the elected officials was consistent that Brookwood does not want to become the dumping ground for these type areas. They do not want this to result in blight. They do not want this to harm the characteristics of the commercial area. And all of the legislatively determined reasons that were contained within the denial resolution are for a legitimate governmental purpose. Brookwood does not have a proprietary interest in its land through this sales option contract, which has expired. And there is a legitimate governmental interest and a relational relationship to the decision by the city. And as I say, there is no similarly situated comparator in StorageMax . StorageMax . . . Your Honor, as I see my time is up, so we would ask that this Court affirm the District Court. Thank you. All right. Thank you, sir. Mr. Bentley, you have a rebuttal. Just briefly, Your Honors. I want to start with this concept that Brookwood did not develop certain facts, including its expert, until after the city process. Well, that's right. But the reason is, no one thought that they had to until the Board of Aldermen adopted an ordinance denying the permit. I mean, Mr. Piper, Brookwood's representative, testifies at page 2159 of the record that two aldermen, just before the vote, said you're, quote, looking good on the vote. StorageMax . . . They didn't have to have an expert to get their conditional use permit. The professional planning staff of the city . . . Well, he just laid out kind of a litany of differentiations between the two. Mr. Scanlon did. Well, I mean, qualitative differences, location, blight, commercial, et cetera, that at least facially, his argument is that they're dissimilar as a comparator. So, what's the thrust of your response to that dichotomy, the way he laid it out? Yeah. Judge Stewart, my response would be, maybe he'll convince jurors of that. That sounded like some good reasons, but there are countervailing reasons that are in the record that viewed in the light most favorable to Brookwood, reasonable jurors could say, we just don't believe that. That evidence includes Donovan Scruggs, an expert city planner who looked at both sites and said you couldn't ask for a better comparator than StorageMax. StorageMax was approved under the same ordinance that Brookwood was denied under. And then you would show jurors the emails from the city's own planning staff to Brookwood saying StorageMax is the standard. If you follow the StorageMax model, you're likely to get approved. Those are the type of things that rebut these facially plausible reasons. But turning back really quickly to the evidence before the board, I would like to direct the court to Mr. Malone, a zoning board member whose deposition was taken in this case, and particularly his testimony in 1870-71 where he says Brookwood's presentation at the zoning board was, quote, textbook. He then exchanged text messages with the alderman that appointed him saying he felt compelled to vote for the application. There was certainly evidence before the city showing that Brookwood was entitled to its permit. The fact that it got expert evidence when it got into litigation does not change that fact. The last thing I'd like to address, Your Honor, is the owner's authority argument again because I feel like the city's really leaning into post hoc arbitrary decision making here. I mean, the purchase contract, as Mr. Piper testified, confirmed that they had a contract that permitted them to seek these permits. And by the way, there's no dispute at all that the selling property owner, Drury, knew they were going to seek these permits. So it's not even a question. The question is whether the authority was good enough. It clearly was. Thank you, Your Honors. All right. Thank you, counsel. On both sides for the briefing and argument, we'll consider the case submitted. Before we take up the third and fourth cases, the panel